## Glew *v.* Pittsburgh Railways Company, Appellant.

*Negligence—Master and servant—Vice-principal—Street railways—Motorman—Superintendent—Defective tracks—Knowledge of dangerous condition—Reliance on master's orders—Question for jury.*

In an action to recover damages for personal injuries, the case is for the jury and a verdict for plaintiff will be sustained where it appears that the plaintiff, a motorman in the employ of the defendant, was engaged to run a freight car whenever and wherever directed by the superintendent of the defendant's supply department; that on the day of the accident he was instructed to run his car, with a load of old wheels on board and pulling a gondola car loaded with coal behind, over a certain line the tracks of which were out of repair; that the plaintiff suggested this fact to the superintendent or his representative, and said that it would be dangerous to run the kind of load he was hauling over these tracks, when he was told that he should proceed to do as he was ordered or he would "learn what would happen to him;" that he carried out the directions of the superintendent and while on the line the tracks separated, causing the gondola car to drop down and break an axle, with a resulting shock to the freight motor car which disploced the old car wheels and caused one of them to fall upon and injure the plaintiff.

Argued Oct. 25, 1911. Appeal, No. 75, October T., 1911, by defendant from judgment of C. P. Washington Co., Feb. T., 1910, No. 103, on verdict for plaintiff in case of Thomas Glew v. Pittsburgh Railways Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for personal injuries.

The facts appear in the following opinion by McIlvaine, P. J., overruling motion for judgment non obstante veredicto:

This motion raises but a single question, and that is, did the Court err in refusing the defendant's request to give the jury binding instructions to find in its favor.

The plaintiff was an employee of the defendant company. He was a motorman engaged to run a freight motor car whenever and wherever directed by the superintendent of the department in which he was employed. The defendant company operates the street railways in the city of Pittsburgh and the neighboring boroughs, and the interurban cars that run into Washington County. It has a department known as the supply department, with a store at Homewood. J. A. Laughlin is the superintendent of that department and has entire control of it. In his department he has three motor freight cars, which he uses in distributing the supplies which he keeps in his store to the different points on the defendant's system at which they may be needed. As the calls for supplies come at irregular intervals and whenever needed, the services of the plaintiff in running the motor car are rendered upon the express order of the superintendent, and he comes and goes as the superintendent directs. On the 5th day of May, 1909, the plaintiff was sent out with his motor car from the Homewood store for the purpose of getting some old car wheels at Rankin station, and also of getting a gondola load of coal at Glenwood station, the gondola car when loaded with coal to be attached to the freight motor car. While at Glenwood station he was called by telephone by the store at Homewood and the superintendent, through his assistant, directed him, after he had gotten his load as ordered in the morning, to proceed to Braddock avenue in Turtle Creek borough, go along that avenue to the factory of the Westinghouse Airbrake Company and there get certain castings, and then return with his load to Homewood. The railway tracks on Braddock avenue were out of repair and the plaintiff when talking over

the 'phone to the store at Homewood suggested this fact to the superintendent or his representative, and said it would be dangerous to run the kind of a load that he was hauling over those tracks, when he was told, as he claims, that he should proceed to do as ordered or he would learn in the morning what would happen him. He carried out the directions of his superintendent, loaded the old car wheels at Rankin station into the box car and took the loaded gondola of coal hooked to his freight car and started for Braddock avenue for the purpose of getting the castings as directed. When on Braddock avenue, as he alleges, the track separated and allowed his gondola car which was running in front, to drop down and break an axle, and this sudden stop of the gondola car caused a shock to the freight motor car which was running behind it, and this shock displaced the old car wheels and caused one of them to fall on the plaintiff's foot and injured it. He alleged at the trial that the negligence of the company in not keeping their tracks in repair was the proximate cause of the injury to his foot. No defense was made by the defendant company as to the charge that it was negligent in not keeping its tracks on Braddock avenue in proper repair. They rested their whole defense on what they claimed was the contributory negligence of the plaintiff in running his car over tracks which he himself knew were dangerous; and at the close of the testimony their request to the court was to charge the jury as a matter of law that the plaintiff was guilty of contributory negligence in running his car over Braddock avenue with the knowledge he had of its condition, and that their verdict should be for the defendant company on that account. The refusal to so charge and leaving the question of whether or not the plaintiff was guilty of contributory negligence to the jury, is the matter that now is complained of. In arguing this case the counsel for the defendant stated expressly that the tracks on Braddock avenue

were out of repair and they had no defense to make against the plaintiff's charge that they were negligent in this regard. They claimed, however, that the plaintiff having himself said in his conversation over the telephone to his superintendent, that it would be dangerous to run his cars over that track and then afterwards having done it, this was negligence on his part and the Court should have found as a matter of law that it was negligence.

Now, there can be no dispute about the rules, first that an employee of a railway company, such as the defendant, assumes all the risks that are incident to the business in which he is engaged; second, that where he knows of a dangerous condition in the tracks of the company, and voluntarily runs his car over the dangerous tracks, he assumes all the risks of doing so, unless the danger is so slight or the risk so little that a man of ordinary prudence would have assumed it. But these general rules to which we have just referred have their limitations. First, if the defects grow out of a want of ordinary care and vigilance on the part of the railroad company in providing or maintaining a reasonably safe track and are not so serious but that with care and prudence the track may be safely used, and at the request of the master the servant continues to use them and is injured, notwithstanding the exercise of care and prudence, he may hold the master liable. Again, if the servant suggests the danger and the master says or does that which leads the servant to believe that his fears are not well founded and that the master's judgment is that, notwithstanding the defect, the tracks can be safely used, the servant has a right to rely upon the superior judgment of his master, and if he does and injury happens, the master is liable, notwithstanding the servant's previous knowledge of the defect. Now, applying these limitations to the general rule to the facts in this case, it appears to us that it clearly raised a question of fact for the determina-

tion of the jury.  It is true that the plaintiff said on cross-examination that he knew that the Braddock avenue tracks were in a dangerous condition and that he protested against running his cars loaded as they were over those tracks, but he alleges that the superintendent or his representative insisted on him doing it and added that he knew what would happen if he would disobey these orders.  Now, what is the proper construction to be put upon this conversation?  The defendant claims that the proper construction is that the plaintiff knew of the dangerous situation and that he took the language of the superintendent or his representative to be a threat that he would be discharged if he did not run over the dangerous track, and that rather than lose his job he risked being injured as he was.  The plaintiff's contention was that his conversation simply meant that the Braddock avenue track was out of repair, but that the superintendent thought it was not necessarily dangerous to run over, as the company at that time was running many trains a day over it of heavy interurban cars, and that there had no accident happened and it would be as safe to run the plaintiff's cars over it as it was to run these heavy cars, and that the plaintiff had a right to infer from what the superintendent said that he believed that he, by exercising care, could safely do what he was ordered to do, and that he would not have said what he did had he thought he was placing an extra hazardous risk upon the plaintiff, and after having had this conversation with his superintendent that he concluded he would do the best he could, never thinking that he would be injured as he was, and that what happened to him was not what he expected.  Under these contentions, it struck us at the trial and does yet, that the Court would have erred had it said as a matter of law that the plaintiff was guilty of contributory negligence.

"The fact that the person injured was aware of the danger is not sufficient to render him guilty of con-

tributory negligence as a matter of law, but the question should be submitted to the jury:" 29 Cyc. 640.

Again, it is clear from the testimony, as we view it, that the plaintiff did not *voluntarily* run his car over this dangerous track. He did it upon the order of the superintendent of the department in which he was working,—the vice principal of the defendant, and the jury was the proper tribunal to say whether he had a right by that order to infer that the superintendent thought he could safely pass over the tracks, and, if that inference was justifiable, to also say that the plaintiff as employee trusted to the judgment of his superior. If that were the case, then the true rule would be that laid down by Mr. Justice Mestrezat in Williams v. Clark, 204 Pa. 416, which we gave to the jury for their guidance and which reads as follows:

"We think the facts in this case bring it within the well recognized rules laid down in the text books and in our own decisions. The true rule in this case, as in all other cases, is, that if the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon his master's opinion. A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own. The servant's dependent and inferior position is to be taken into consideration; and if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably and imminently dangerous."

We recognize the fact that this is a close question, but we have always in cases of this kind resolved the doubt in favor of a trial by jury rather than by the

judge; and whether or not Thomas Glew, the plaintiff, under all the circumstances which led up to his running his cars over Braddock avenue exercised ordinary care, under these circumstances, was a question of fact and in our opinion it would have been error on the part of the court to say as a matter of law he was guilty of contributory negligence in doing what he did; and the motion for judgment n. o. v. must therefore be overruled.

And now, January 17, 1911, this motion came on to be heard, and was argued by counsel, whereupon, upon due consideration it is ordered, adjudged and decreed that the motion be overruled and judgment be entered for the plaintiff on the verdict of the jury.

Verdict for plaintiff for $2,795.83 and judgment thereon. Defendant appealed.

*Error assigned* was overruling motion for judgment non obstante veredicto.

*R. W. Irwin,* with him *Jas. A. Wiley,* for appellant, cited Green & Coates Pass. Ry. Co. v. Bresmer, 97 Pa. 103; Diehl v. Iron Co., 140 Pa. 487; Sykes v. Packer, 99 Pa. 465; Danisch v. Amer, 214 Pa. 105; Brossman v. R. R. Co., 113 Pa. 490; Leary v. R. R. Co., 139 Mass. 580 (2 N. E. Repr. 115); Sweeney v. Envelope Company, 101 N. Y. 520 (5 N. E. Repr. 358); O'Neil v. Keyes, 168 Mass. 517 (47 N. E. Repr. 416); Nuss v. Rafsnyder, 178 Pa. 397; Talbot v. Sims, 213 Pa. 1.

*W. S. Maxey* with him *James M. Clark,* for appellee; cited: Doyle v. Mo. Kan. & Texas Trust Co., 140 Mo. 1 (41 S. W. Repr. 255); Patterson v. R. R. Co., 76 Pa. 389; Kehler v. Schwenk, 151 Pa. 505; Gerding v. Standard Pressed Steel Company, 220 Pa. 229.

PER CURIAM, January 2, 1912:

The judgment is affirmed on the opinion of the learned President Judge of the Common Pleas.